==================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------
No. 13
The People &c.,
          Respondent,
        v.
Gordon Gross,
          Appellant.


          Brian Shiffrin, for appellant.
          Melvin Bressler, for respondent.


ABDUS-SALAAM, J.:

          In this appeal, we are asked to determine whether

defendant's trial counsel was ineffective.  Because counsel's

alleged failures were insufficient to overshadow her overall

meaningful representation of defendant, we hold that defendant

received effective assistance of counsel.

- 1 -

I.

Defendant Gordon Gross was accused of child sexual abuse, which resulted in him being indicted for course of sexual conduct against a child in the first degree (see Penal Law § 130.75 [1] [b]) and endangering the welfare of a child (see Penal Law § 260.10 [1]).  During trial, the child victim testified that defendant subjected her to sexual abuse over a number of years, including anal penetration.  She testified that she disclosed the sexual abuse to a number of individuals, including her mother, sister, school principal, and two police officers assigned to investigate her allegations.  After this testimony, defendant's counsel did not request a limiting instruction that the child's statements of prior disclosures should not be considered in determining the truth of the child's allegations.

The People called as witnesses the child's mother, sister, school principal, and the two officers.  During each witness's testimony, defense counsel successfully objected when the witness was asked a question intended to elicit an answer regarding the specific statements of abuse the child disclosed to that witness.  The People also called Dr. Danielle Thomas-Taylor, a child sex abuse expert, who examined the child at the People's request approximately three years after her last allegation of sexual abuse.  Over defense counsel's objection, Dr. Thomas-Taylor was permitted to testify that the child told her that defendant sexually abused her by anal penetration.  Dr.

Thomas-Taylor also described her physical examination, stating that the child "had a generally normal physical examination." Despite that conclusion, Dr. Thomas-Taylor opined that the normal results of the child's physical examination did not negate the possibility that the child was anally penetrated some time before. Specifically, she stated she would not expect to see scarring after some years because the anus "heals very quickly, within a day or two."

During the People's summation, the prosecutor argued that the key to determining that the child was telling the truth was her prior consistent statements, referencing all the prosecution witnesses who testified that the child had disclosed to them her allegations of sexual abuse. Following deliberations, the jury found defendant guilty of course of sexual conduct against a child in the first degree and endangering the welfare of a child. Defendant was sentenced to a determinate term of 25 years in prison with 10 years of postrelease supervision. The judgment was affirmed by the Appellate Division (see People v Gross, 79 AD3d 1660 [4th Dept 2010]) and his criminal leave application on his direct appeal was denied by a Judge of this Court (see People v Gross, 16 NY3d 895 [2011]).

Defendant moved for post-conviction relief pursuant to CPL 440.10 (h). Defendant argued that his state and federal constitutional rights to effective assistance of counsel were

violated by his trial counsel's failure to oppose the admission and use of the prior consistent statements of the child which bolstered her credibility.  Additionally, defendant argued that his trial counsel was ineffective for failing to consult or present testimony from a qualified independent medical expert to support his contention that no sexual abuse occurred.  In an affirmation from defendant's current attorney accompanying the motion, the attorney indicates that he spoke with defendant's trial counsel who stated that "she did not consult with or call an expert because she had not anticipated that the People would be permitted to have Dr. Thomas-Taylor testify as to what [the child] told her or that the doctor would testify that the medical finding had no significance."

County Court denied the motion, holding that the failure of defendant's trial counsel to object to the admission of the child's prior disclosures did not render her ineffective. Additionally, the court found that defendant's trial counsel was not ineffective for failing to call an expert witness, noting that defendant did not offer an expert opinion that some indicia of sex abuse would have been likely.  Thus, based on the record alone the court rejected defendant's arguments and denied his motion.  The Appellate Division, with two Justices dissenting, affirmed, concluding that the testimony regarding the child's prior disclosures did not constitute improper bolstering because it was not admitted for its truth but rather to demonstrate how

the child disclosed the abuse, thereby commencing the investigation into her allegations (see People v Gross, 118 AD3d 1383, 1384 [4th Dept 2014]).  Further, the court concluded that defendant received meaningful representation despite his trial counsel's failure to object to the prosecutor's summation comments or to call a medical expert to testify on defendant's behalf.  Therefore, the court concluded that trial counsel was not ineffective.  The dissenting Justices voted to reverse.  In their view, defendant's trial counsel's failure to object to inadmissible testimony regarding the child's prior consistent statements deprived him of his right to effective assistance of counsel (see id. at 1386).

## II.

On a CPL 440.10 motion pursuant to subsection h, the burden is on the defendant to demonstrate that "[t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [h]), here his right to effective assistance of counsel.  On an ineffective assistance of counsel claim under the Sixth Amendment to the United States Constitution, a defendant must demonstrate that (1) his or her attorney committed errors so egregious that he or she did not function as counsel within the meaning of the United States Constitution, and (2) that counsel's deficient performance actually prejudiced the defendant (see Strickland v

Washington, 466 US 668, 687-688 [1984]).  New York's
constitutional requirement of effective assistance of counsel is
met when "the evidence, the law, and the circumstances of a
particular case, viewed in totality and as of the time of the
representation, reveal that the attorney provided meaningful
representation" (People v Benevento, 91 NY2d 708, 712 [1998]).

Defendant argues that his trial counsel was ineffective
for failing to call an expert witness who could testify that the
absence of physical evidence here could indicate that the victim
was never anally raped by defendant.  He asserts that trial
counsel should have called an expert witness who could have
testified that the victim's allegations of painful anal rape
should have resulted in lasting physical trauma which could be
detected some years after the last allegation of anal
penetration.  As support, he points to three studies.  Defendant,
however, failed to provide a proper foundation for the courts to
consider these studies, as he did not include an affidavit by a
medical expert explaining the conclusions of the studies or how
those conclusions support his contentions.  He thus has failed to
meet his burden of demonstrating that his trial counsel was
ineffective for failing to call an expert under either the
federal or state standard.

We have held on numerous occasions that counsel will
not be found ineffective where he or she had a strategic reason
for the failure complained of by defendant (see People v Barboni,

21 NY3d 393, 405-406 [2013]).  Defendant's trial counsel
articulated reasons for not calling an expert witness, and those
reasons were arguably legitimate.  Therefore, defense counsel was
not ineffective.


                              III.

          The testimony of each of the prosecution witnesses here
was properly admitted into evidence as background information,
completing the narrative of how defendant came to be investigated
for sexually abusing the child.  Thus, the courts below properly
held that the statements did not constitute improper bolstering.

          "The term 'bolstering' is used to describe the
presentation in evidence of a prior consistent statement" (People
v Smith, 22 NY3d 462, 465 [2013]).  This Court has repeatedly
held that it is generally improper to introduce testimony that
the witness had previously made prior consistent statements, when
there is no claim of either prompt outcry or recent fabrication
(see People v Rosario, 17 NY3d 501 [2011]; see also People v
Fisher, 18 NY3d 964, 966 [2012]; People v McClean, 69 NY2d 426
[1987]).  In People v Smith, we recognized that such evidence
"may, by simple force of repetition, give the jury an exaggerated
idea of the probative force of a party's case"  (Smith, 22 NY3d
at 466).  A prior consistent statement may be admissible when it
is offered not for its truth, but for some other relevant
purpose, for example to assist in "explaining the investigative

process and completing the narrative of events leading to the
defendant's arrest" (People v Ludwig, 24 NY3d 221, 231 [2014]).

Our decision in People v Ludwig similarly concerned
allegations by the defendant that trial testimony improperly
bolstered the child victim's claims of sexual abuse.  In that
case, the child victim's brother testified that one day while he
and his sister -- the child victim -- were playing in the
backyard, the child victim stated that the backyard smelled like
something that happened with her dad.  After being questioned by
her brother as to the meaning of her statement, the child victim
stated that the backyard smelled like penis.  The brother made
the child victim go inside and tell their mother what she had
just said.  The brother was allowed to testify to those
statements over the defendant's objection.  This Court determined
that the brother's testimony was admissible as background
information that assisted with the investigative process.  So too
here, the testimony of the child's mother, sister, principal and
the two officers was admissible as necessary background
information to demonstrate what ultimately led to defendant's
arrest.  The testimony of those witnesses included nonspecific
statements that the child had made a disclosure and described
what steps they took after hearing the disclosure.

In Ludwig, we acknowledged that "New York courts have
routinely recognized that 'nonspecific testimony about [a]
child-victim's reports of sexual abuse [does] not constitute

improper bolstering [when] offered for the relevant, nonhearsay purpose of explaining the investigative process'" and assisting in the completion of the narrative of events which led to the defendant's arrest (id. at 231, quoting People v Rosario, 100 AD3d 660, 661 [2d Dept 2012]).  Here, the testimony of the child's mother, sister, principal and the two officers fulfilled these legitimate nonhearsay purposes, and defense counsel's objections to the testimony of the witnesses ensured that the witnesses did not specifically repeat what the child told them.

The majority of Dr. Thomas-Taylor's testimony as to the child's specific allegations of sexual abuse was admissible under People v Spicola (16 NY3d 441 [2011]).  In Spicola, we held that testimony of a nurse-practitioner concerning the child's history of sexual abuse was permissible testimony because the child's statements to the nurse-practitioner "were germane to diagnosis and treatment" and therefore "were properly admitted as an exception to the hearsay rule" (16 NY3d at 451).  Applying Spicola here, the trial court properly admitted Dr. Thomas-Taylor's testimony.  The testimony explained why the child was being examined by Dr. Thomas-Taylor and why the normal results of the physical examination did not indicate that the child had not been subjected to sexual abuse.  This background information completed the narrative and was properly permitted under the exception to the hearsay rule.  Moreover, defense counsel lodged an objection to Dr. Thomas-Taylor's testimony

concerning the child's history; however, that objection was overruled.  Defense counsel can hardly be deemed ineffective on this score.

Trial counsel's failure to request that a limiting instruction be given to the jury that the child's testimony concerning the disclosures she made to other individuals should not be accepted for the truth of her allegations, does not render her ineffective in light of the totality of her representation of defendant (see People v Benevento, 91 NY2d 708, 712 [1998] [requiring examination of the totality of counsel's performance to evaluate effectiveness]; People v Baldi, 54 NY2d 146, 147 [1981]).  Moreover, defense counsel was not ineffective for failing to object to the prosecutor's summation comments referencing the testimony of the witnesses to whom the victim had disclosed.  Despite the dissent's argument to the contrary, the failure to object to the prosecutor's statement on summation does not negate the overall meaningful representation provided to defendant by his counsel.  Defense counsel zealously advocated for defendant, making multiple successful objections which limited the testimony of several prosecution witnesses.  Additionally, defense counsel may have made a strategic choice not to object during summation given that the witnesses were not able to testify to the specifics of the child's allegations (see People v Barboni, 21 NY3d 393, 405-406 [2013]).  She may have felt that such an objection would not be worthwhile given the

limited testimony elicited from the witnesses.  Such a strategic decision does not support a finding of ineffectiveness (see People v Barboni, 21 NY3d 393, 405-406 [2013]).


IV.

It is within the trial court's discretion to determine whether a hearing on a CPL 440.10 motion should be ordered (see People v Jones, 24 NY3d 623, 635 [2014]; People v Satterfield, 66 NY2d 796, 799 [1985]).  This Court, however, may review that determination for an abuse of discretion (see Jones, 24 NY3d at 635).  No abuse occurred in this case, as the record clearly indicates that defendant's trial counsel was not ineffective.

Accordingly, the Appellate Division order should be affirmed.

People v Gordon Gross

No. 13


RIVERA, J. (dissenting):

On constraint of People v Ludwig, (24 NY3d 221 [2014]), I agree that defense counsel may not be considered ineffective for failing to object during the People's case-in-chief to testimony about the victim's disclosure of defendant's sexual abuse. However, the rule adopted in Ludwig is a narrow one, justified on the theoretical assumption that such testimony is admitted to assist the jury in understanding the events leading to a defendant's arrest (id. at 231), and not for its truth about the victim's allegations (id., citing People v Gregory, 78 AD3d 1246 [3d Dept 2010]). Accordingly, while the prosecutor here could elicit the testimony, he exceeded the bounds of permissible summation by advocating that the victim's disclosure was proof of the abuse.

The prosecutor's exhortation to the jury was an invitation to misuse the testimony, and was especially prejudicial to the defense because the People lacked corroborating physical evidence of the abuse, the victim was the sole witness to defendant's actions, and the ultimate determination of guilt turned on the victim's credibility. Under such circumstances, defense counsel's failure to timely object and request an instruction directing the jury to ignore the

- 1 -

prosecutor's argument constitutes ineffective assistance, mandating reversal and a new trial. Therefore, I dissent.

The premise of Ludwig is that testimony from a witness that the victim disclosed abuse is admissible for the "legitimate nonhearsay purposes" of "explaining the investigative process and completing the narrative of events leading to a defendant's arrest" (id. at 231-232). According to this reasoning, the testimony is admissible solely "to depict for the jury the circumstances attendant to the disclosure that triggered the investigation" (id. at 232). However, I continue to believe that Ludwig was wrongly decided because, as the dissent in that case explained, the majority's approach "eviscerates the hearsay rule and allows wholesale circumvention of the prompt outcry rule by countenancing the admission of prior consistent statements that provide a 'narrative' or 'investigative purpose' even where the investigative purpose is not in issue" (Ludwig, 24 NY3d at 235 [Lippman, C.J., dissenting]). Notwithstanding the Ludwig majority's determination to the contrary, "these statements are obviously introduced to bolster the complainant's credibility and establish the truth of the accusation" (id. at 236 [Lippman, C.J., dissenting]), and does little to ensure the reliability of the victim's testimony (id. at 237).

The analytic error of Ludwig is compounded by that majority's Court's failure to set appreciable limits on "narrative" testimony. The instant appeal is a prime example of

the foreseeable evidentiary excesses made possible by the holding, and why <u>Ludwig</u> is a dangerous precedent that should be discarded.  According to the record, after the victim recounted that she disclosed the abuse, the child's mother, sister, school principal, and two police officers also testified that the victim disclosed the abuse to each of them.  Yet, there is no discernable explanation as to why five reaffirmations of the victim's disclosure were necessary background information about the investigation.  Nor is there a plausible reason for three witnesses to testify similarly about the same-day disclosure to the police when disclosure is unchallenged.  As this case illustrates, the potential for evidence to cross the line from "an explanation of the narrative" to improper bolstering of the victim's testimony is increased by the sheer numerosity of witnesses who testify that the victim disclosed.  Defendant does not directly challenge the judge's evidentiary rulings, therefore given the posture of the appeal, I agree that counsel is not ineffective for limiting her objections to the specific details of the abuse rather than type of serial testimony presented in this case.

Counsel's failure to object and request curative instruction for the prosecutor's use of the testimony during summation is a different matter.  The record establishes that the prosecutor made the testimony of non-victim witnesses the central theme of his argument that the victim's claims of abuse should be

treated as fact.  Even within the confines of <u>Ludwig</u>, the prosecutor's actions were improper because he relied on the testimony for the impermissible purpose of establishing that the defendant committed the acts as described by the victim.

The prosecutor argued to the jury that the case turned on whether the victim was telling the truth, and if the jurors believed the victim, they had to return a guilty verdict.  He asked rhetorically, why would the victim "tell strangers, tell the police, me, you, [sic] grand jury" about the sexual abuse. The prosecutor implored the jurors to consider "[w]hy would [the victim] do this if it didn't happen, if it wasn't the truth."  To persuade the jury that the abuse occurred, the prosecutor emphasized that the victim repeatedly disclosed the abuse to several different people, including in formal legal settings. The prosecutor declared that

> "[t]his is about the fifth time she's talked
> about this . . . . According to her
> testimony, first time was June 25th to the
> police . . . . The next time, month later
> when she came to see me and then testified
> before the grand jury.  And then she had
> again talked about this to the doctors.  So
> again that, that will be about five times
> when she came here and told you what happened
> . . .[S]he's told the story or she's told
> give this, these facts a number of times."

Again, near the end of his summation, the prosecutor asked the jury to consider why the victim would "go through all this, lie to all these people if this didn't happen?"

These excerpts leave no doubt that the prosecutor

sought to bolster the credibility of the victim and establish the fact of the abuse through the victim's repeated disclosure of her allegations. By arguing to the jury that it could base its credibility determination on the fact that the victim disclosed the abuse on several occasions to different people, and by characterizing the victim's disclosures as statements of fact, the prosecutor re-purposed the testimony and mischaracterized its meaning. In a case that hinged on the credibility of the victim, defense counsel could only address the devastating impact of this summation argument by objecting and requesting the judge instruct the jurors that they could not rely upon the testimony in the manner advocated by the prosecutor.

Under these circumstances, counsel's failure to act constituted egregious error that cannot be excused, as the majority argues, as part of a reasonable defense strategy (maj op, at 12). The majority speculates that counsel discounted the impact of summation because the non-victim testimony did not include details of the abuse. However, the prosecutor's focus on the victim's repeated disclosure was the basis for arguing that the abuse occurred. The fact that the non-victim witness testimony lacked details of the victim's allegations was irrelevant to the prosecutor's point. Thus, to counteract the persuasive effect of the prosecutor's argument, defense counsel had to lodge an objection and request that the judge instruct the jury on the proper consideration to be accorded the testimony.

Counsel did not take these necessary minimal steps, and as a consequence her representation was ineffective, and denied defendant a fair trial (People v Baldi, 54 NY2d 146 [1981]).

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Abdus-Salaam.  Judges Pigott, Stein and Fahey concur.  Judge Rivera dissents in an opinion. Chief Judge DiFiore and Judge Garcia took no part.

Decided February 18, 2016